UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIS RIOS,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Civil Action No.: 16-cv-10191 |

## MEMORANDUM AND ORDER

**CASPER, J.**      May 5, 2017

### I. Introduction

Plaintiff Luis Rios ("Rios") has filed this lawsuit against the United States of America, alleging that he sustained physical injuries due to its negligence in violation of 33 U.S.C. § 905(b). D. 1 ¶¶ 10-16. The United States has moved to dismiss under Fed. R. Civ. P. 12(b)(1) on the basis that Rios did not properly exhaust the administrative requirements under the Admiralty Extension Act ("AEA") prior to bringing this case in federal court. D. 16. The Court **ALLOWS** the motion to dismiss, but, as explained below, not solely on the basis of a failure to exhaust under the AEA, and shall dismiss for lack of subject matter jurisdiction.

### II. Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant can move to dismiss an action in federal court based upon a lack of subject matter jurisdiction. "'Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed.'" Fabrica de Muebles J.J. Alvarez,

Incorporado v. Inversiones Mendoza, Inc., 682 F.3d 26, 32 (1st Cir. 2012) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)). Instead, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). In other words, once a defendant challenges the jurisdictional basis for a claim in federal court pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden of proving that jurisdiction exists. Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007).

In general, the Court has "very broad discretion in determining the manner in which it will consider the issue of jurisdiction." Valedon Martinez v. Hosp. Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1986). When considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996) (citing Murphy, 45 F.3d at 522). The Court may also, however, look beyond the pleadings to determine whether it has jurisdiction. Katz v. Pershing, LLC, 806 F. Supp. 2d 452, 456 (D. Mass. 2011), aff'd, 672 F.3d 64 (1st Cir. 2012); see Martinez-Rivera v. Commonwealth of Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016); Aversa, 99 F.3d at 1210. If the Court concludes that it lacks jurisdiction over the claims alleged, it must dismiss the action. See Johansen, 506 F.3d at 68.

**III.    Factual and Procedural Background**

Unless otherwise indicated, the following summary is based upon the facts alleged in the complaint, D. 1.

Rios was a member of the crew of a vessel owned, operated or controlled by the United States and named the USNS William McLean ("the McLean"). D. 1 ¶¶ 1, 6. On February 13, 2014, Rios and a fellow crew member were working on "a CHT hose" connected to the McLean that was not depressurized. Id. ¶¶ 6, 9. Rios was holding onto the hose while a fellow crew member uncoupled it. Id. ¶¶ 6-7. When the hose uncoupled, it propelled into Rios, tossed him approximately ten feet and caused him to sustain injuries to his back and hip. Id. ¶ 8. His injuries required continuing medical treatment and caused permanent disability and loss of enjoyment. Id. ¶ 15.

On August 7, 2015, Rios submitted an initial presentment letter pursuant to 46 U.S.C. § 30901 to the United States Department of Transportation Maritime Administration ("the Maritime Administration"), the United States Department of Transportation, the United States Department of Justice and the United States Attorney for the Southern District of Texas via certified mail. D. 16-4. There is no dispute that the United States Attorney's Office for the Southern District of Texas and the United States Department of Justice received the presentment letter. D. 16-1 at 2-3. The record reflects, however, that neither the Department of Transportation nor the Maritime Administration received the initial presentment letter. Id. at 3; D. 16-5 ¶¶ 2, 4.

On September 1, 2015, Rios mailed a second presentment letter pursuant to 46 U.S.C. § 30901 to the Maritime Administration. D. 16-1 at 3; D. 16-6. The Maritime Administration received this second letter on September 17, 2015. D. 16-5 ¶ 5. That same day, the Maritime

Administration forwarded the second letter to the Navy, the entity that owned and operated the McLean. Id.

Thereafter, Rios filed this action on February 5, 2016. D. 1. The United States moved to dismiss for lack of subject matter jurisdiction. D. 16; see D. 16-1 at 5-11. The Court heard the parties on the pending motion and took the matter under advisement. D. 20.

## IV. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

### A. Establishing Admiralty Jurisdiction

There are two ways in which the Court may have admiralty jurisdiction. First, the Court may have subject matter jurisdiction to hear a maritime case if it meets the historic test for admiralty jurisdiction. "The traditional test for admiralty tort jurisdiction asked only whether the tort occurred on navigable waters. If it did, admiralty jurisdiction followed; if it did not, admiralty jurisdiction did not exist." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531-32 (1995). Second, the Court may have admiralty jurisdiction pursuant to the AEA. The AEA was created to "remedy the anomalous situation that parties aggrieved by injuries done by ships to persons or property ashore (such as bridges, docks, and the like) could not sue in admiralty even though the damage to the ships caused by a land structure was maritime." Canino v. Londres, 862 F. Supp. 685, 691 (D.N.H. 1994) (internal quotation omitted). The AEA is a jurisdictional statute that extends the "admiralty and maritime jurisdiction of the United States [. . .] to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a). The AEA also provides that a party may only raise a claim against the United States "for injury or damage done or consummated on land by a vessel on navigable waters" pursuant to the Suits in

4

Admiralty Act or the Public Vessels Act and that remedy under any other statute is not possible. § 30101(c)(1).

### B. The AEA Does Not Apply in This Case

In its motion, the United States argues that the circumstances of the alleged accident would only provide maritime jurisdiction statutorily through the AEA, but that the Court lacks jurisdiction here because Rios did not complete the steps required by the AEA. D. 16-1 at 5-11.

As explained, the AEA is a jurisdictional statute that extends the federal court's maritime jurisdiction to include instances in which the injury or damage occurred on land but was caused by a vessel on navigable waters. Although the AEA extends such jurisdiction, the AEA specifies that a civil action against the United States "may not be brought until the expiration of the 6-month period after the claim has been presented in writing to the agency owning or operating the vessel causing the injury or damage." 46 U.S.C. § 30101(c)(2). Section 30101(c)(2), in effect, imposes an administrative exhaustion requirement for prospective litigants in which they must first present their claim to the appropriate federal agency and may only thereafter file a claim in federal court. Thus, if the AEA applies in this case, Rios must demonstrate that he satisfied the administrative exhaustion requirement of § 30101(c)(2) and only brought suit in federal court after the six-month waiting period.

Here, the United States asserts that Rios cannot establish subject matter jurisdiction under the AEA because he cannot show that he complied with the AEA exhaustion requirement. D. 16-1 at 10-11. That is, the United States asserts that this Court lacks subject matter jurisdiction because Rios filed the instant lawsuit less than six months after submitting presentment letters to

the agency that owned or operated the vessel that caused his injuries.[1] Id. Before examining whether Rios met the administrative requirements in § 30101(c)(2), the Court first assesses whether the AEA applies in this case.

For subject matter jurisdiction under the AEA, the Court must conclude that the damage or injury pled was "done or consummated on land" and was "caused by a vessel on navigable water." 46 U.S.C. § 30101(a). First, the Court concludes that Rios sustained the injuries to his hip and back while he was on land. It is well-established that piers and docks are recognized as "extensions of land" for purposes of admiralty jurisdiction. Victory Carriers, Inc. v. Law, 404 U.S. 202, 206-07 (1971); see Grubart, 513 U.S. at 531-32 (explaining that piers traditionally were treated as extensions of land). In addition, permanent drydocks are considered "land" for purposes of establishing jurisdiction. Florio v. Olson, 129 F.3d 678, 680 (1st Cir. 1997); see Loeber v. Bay Tankers, Inc., 924 F.2d 1340, 1342 (5th Cir. 1991) (explaining that the AEA applied because the vessel "allegedly caused the injuries to the plaintiffs while they were on an adjacent dock"); Riverside Constr. Co. v. Entergy Mississippi, Inc., No. 13-cv-876-HTW-LRA, 2014 WL 11513135, at *4-5 (S.D. Miss. Sept. 2, 2014), aff'd sub nom. Riverside Const. Co. v. Entergy Mississippi, Inc., 626 F. App'x 443 (5th Cir. 2015). Both piers and docks are extensions of land "even when the pier or dock extends onto or over navigable waters." Dobrovich v. Hotchkiss, 14 F. Supp. 2d 232, 234 (D. Conn. 1998). Other types of docks and piers, such as floating docks and ramps leading to docks, are likewise considered to be land and not extensions of the vessel itself.

---

[1] Here, the United States moves for dismissal on the sole basis that Rios did not fulfill the AEA administrative exhaustion requirements prior to filing suit. D. 16-1. For this reason, the Court will first assess whether the AEA applies and if so, whether the exhaustion requirements were met. The Court will then turn to the two-part Grubart test thereafter. See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527 (1995).

6

See S. Port Marine, LLC v. Gulf Oil Ltd. P'ship, 234 F.3d 58, 63-64 (1st Cir. 2000); MLC Fishing, Inc. v. Velez, 667 F.3d 140, 142 (2d Cir. 2011).

Here, the record shows that Rios was on the dock when the accident occurred. In his interrogatory answer, he attested that he "was on the dock at the time of the incident uncoupling a [ ] hose from the USNS William McLean," D. 16-2 at 6, and repeated several times throughout his deposition that he was on the pier at the time that the hose hit him, D. 16-3 at 18, 20, 26. Rios further clarified that he "was standing next to the rail in the middle of the south pier" and was not on the vessel at the time of the accident. D. 16-2 at 6-7; see D. 16-3 at 16-17 (explaining that he was located on the pier at the time that he was disconnecting the hose and that he was pierside all day long on the date of the incident). In addition, in his presentment letter dated August 7, 2015, Rios explained that he was working to uncouple the hose and that the injury occurred because the crew members onboard the vessel did not properly depressurize the hose, D. 16-4 at 2, further implying that Rios was not located on the vessel at the time of the injury. See D. 16-6 at 2 (same).

Because the Court concludes that Rios's injury occurred on land, it must next consider whether a vessel on navigable waters caused that injury. See Kinsella v. Zim Israel Navigation Co., 513 F.2d 701, 702-03 (1st Cir. 1975); Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey, 183 F.3d 453, 456-57 (5th Cir. 1999). Rios contends that the AEA does not apply because neither the vessel nor its appurtenances caused his injuries. D. 19 at 3-6. In Grubart, the Supreme Court held that for a vessel or its appurtenances to cause an injury, that vessel or appurtenance must proximately cause the injury in question. Grubart, 513 U.S. at 536. The First Circuit has likewise concluded that, for subject matter jurisdiction under the AEA, the Court must resolve whether the injury sustained was caused by a vessel on navigable waters. Kinsella, 513 F.2d at 702-03. The reasoning in Kinsella comports with precedent in other circuits: the AEA

7

applies only if the vessel or its appurtenances caused the injury to an individual on land. See Scott v. Trump Indiana, Inc., 337 F.3d 939, 942-43 (7th Cir. 2003); Anderson v. United States, 317 F.3d 1235, 1237-38 (11th Cir. 2003); Dahlen v. Gulf Crews, Inc., 281 F.3d 487, 492 (5th Cir. 2002).

In general, an appurtenance is "any specifically identifiable item that is destined for use aboard a specifically identifiable vessel and is essential to the vessel's navigation, operation, or mission." Anderson v. United States, 317 F.3d 1235, 1238 (11th Cir. 2003) (quoting Gonzalez v. M/V Destiny Panama, 102 F. Supp. 2d 1352, 1354-57 (S.D. Fla. 2000)). When considering whether an appurtenance caused the injury, the First Circuit cautions "that not every item which is owned by a ship is necessarily an appurtenance for all purposes." Kinsella, 513 F.2d at 704. In Kinsella, for instance, the First Circuit concluded that even though the device in question was sometimes an appurtenance, it was not an appurtenance in relation to the plaintiff's injury because it "was not at the time being used for its usual functions in the hold," "was removed solely to get it out of the way so that unloading of cargo could proceed more conveniently," and "[t]here was no evidence to suggest that the ship had any reason to expect that the [device] would be used in any way while it was on land." Id. In sum, when an injury is not proximately caused by a vessel or its appurtenances, the Court does not have jurisdiction pursuant to the AEA. Egorov, 183 F.3d at 456-57; see Oliver v. Omega Protein, Inc., No. 10-cv-47-REP, 2010 WL 2976522, at *3-4 (E.D. Va. July 19, 2010).

Here, the record indicates that neither the vessel nor its appurtenances caused Rios's injuries. Rios alleges that he was injured when he was struck with a hose that was not depressurized properly, D. 1 ¶¶ 8-9, and the United States does not contend that the injury was sustained in some other manner, see D. 16-1 at 1-2. The AEA, therefore, can only apply to this case if the hose is considered an appurtenance of the McLean. See Kinsella, 513 F.2d at 702-03.

8

The hose, however, is not such an appurtenance. First, the hose was not equipment that was owned or operated by the vessel and was instead "owned, controlled and maintained by Boston Ship Repair." D. 19 at 4. Moreover, the record indicates that the hose was shore-based: the hoses were stored at the Boston Ship Repair, id. at 7, and when it was being used in connection with a vessel, one end of the hose "ran off the ship onto the pier" and connected to a "pump house underneath the ground," D. 16-3 at 16, such that the hose was not destined for use onboard. Furthermore, the purpose of the hose was not to assist in the navigation or missions of the McLean, D. 19 at 4, but instead to empty the vessel's "graywater" that accumulated from the use of the bathroom and showers onboard. D. 19-2 at 1. For all of these reasons, the hose at issue here is not an appurtenance.

As the First Circuit has explained, concluding that admiralty jurisdiction exists whenever an object related to a vessel is in any way involved in events leading to an injury is inconsistent with maritime precedent. Kinsella, 513 F.2d at 705. Here, although the hose was connected to the McLean at the time of Rios's injury, it was not an appurtenance to the vessel: it was a shore-based device in which one end of the hose was connected to a pump house underneath the ground, it did not assist in the operation of the ship, and it was not owned or controlled by the McLean. For these reasons, the Court concludes that the hose was not part and parcel of the vessel and, therefore, the AEA does not apply.

Even if the hose were an appurtenance of the McLean—which the record does not demonstrate—the Court still could not conclude that the AEA applies in this case. This is because the AEA only extends jurisdiction to the vessel and her appurtenances, not injuries sustained due to those performing actions for the vessel or its appurtenances. Egorov, 183 F.3d at 456 (citing Victory Carriers, 404 U.S. at 210-12). In other words, a defect of the vessel or the appurtenance

9

must cause the injury; the injury cannot be due to personnel performing services for the vessel. Dahlen, 281 F.3d at 494 (citing Egorov, 183 F.3d at 456). Here, the record indicates that the accident with the hose was not due to a defect in the hose, but because one or more actors did not properly depressurize the hose. See, e,g., D. 1 ¶¶ 9, 12-15. For instance, Rios testified that it was routine for someone to connect a valve to the hose to release the pressure prior to disconnecting or decoupling the hose and that he believed that someone's failure to do so was the cause of the incident. D. 16-3 at 17. Likewise, a report detailing the incident explained that the accident occurred because "[t]he ship superintendent instructed the labor department foreman to install a pressure gauge and bleeder valve on the ship's end of the [ ] line prior to the incident and it was never done." Id. at 25-26. Moreover, Rios's interrogatory responses further explain that "[i]t was determined that the crewmember on board the USNS WILLIAM MCLEAN did not depressurize the [ ] hose prior to decoupling." D. 16-2 at 6. Beyond this, the record does not indicate nor does the United States argue that the hose itself was faulty in any way. Thus, the Court cannot conclude that a defect in the hose caused the accident. See Dahlen, 281 F.3d at 493-94 (explaining that the AEA did not apply because the injury was caused by the manner in which personnel loaded the cargo and not a defect in the appurtenance itself); Apache Corp. v. GlobalSantaFe Drilling Co., 832 F. Supp. 2d 678, 696 (W.D. La. 2010), aff'd sub nom., 435 F. App'x 322 (5th Cir. 2011) (explaining that the AEA did not apply because the injury was caused by failure of personnel to secure the vessel for an approaching storm and not a defect in the vessel itself). For this additional reason, the AEA does not apply in this case.

### C. Even If the AEA Applied, Rios Has Failed to Satisfy the AEA Administrative Exhaustion Requirement

Also, even if the AEA applied, Rios has failed to satisfy the AEA exhaustion requirement. That is, even if the AEA applied here, the Court would lack subject matter jurisdiction because

Rios did not fulfill the necessary administrative exhaustion requirements prior to filing this federal lawsuit.

Under the AEA, the federal government waives its sovereign immunity and allows federal maritime jurisdiction over injuries or damages consummated on land in only certain circumstances. In re Katrina Canal Breaches Litig., 345 F. App'x 1, 5 (5th Cir. 2009). "[W]hen the sovereign consents to be sued, 'the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Loeber v. Bay Tankers, Inc., 924 F.2d 1340, 1342 (5th Cir. 1991) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). In other words, if a statute includes conditions precedent that must be fulfilled prior to a party filing suit against the federal government, those prerequisites must be completed for the court to have subject matter jurisdiction over the case. Id. With respect to the AEA, the statute requires that a written claim be presented to the federal agency owning or operating the vessel that caused the injury six months before any lawsuit is filed in federal court. 46 U.S.C. § 30101(c)(2). Here, this six-month administrative exhaustion requirement is a necessary prerequisite to this Court having subject matter jurisdiction over Rios's claim based upon the AEA against the United States. See Anderson, 317 F.3d at 1239-40 (holding that the district court did not have jurisdiction to hear the case because the plaintiffs did not fulfill the six-month presentment requirement).

Rios, however, has not demonstrated that he has met this six-month requirement. Even if the Court were to apply the earliest possible date, August 7, 2015 (and not September 1, 2015 when the Maritime Administration received the second presentment letter) as the date upon which Rios presented a written claim to the agency owning or operating the vessel, the Court must still conclude that Rios filed suit before the six-month period lapsed. The record demonstrates that Rios mailed presentment letters on August 7, 2015 to the Maritime Administration, the U.S.

11

Department of Transportation, the United States Department of Justice and the United States Attorney's Office in the Southern District of Texas. D. 16-4. Thereafter, he filed this lawsuit on February 5, 2016. D. 1. That is, Rios did not fulfill the administrative exhaustion requirement because he filed his claim in court a short time before the six-month period had expired. See Anderson, 317 F.3d at 1239-40. Although the period short of the six-month period is only two days, this outcome is consistent with the principle that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." Callahan v. United States, 426 F.3d 444, 450 (1st Cir. 2005) (quoting Lane v. Peña, 518 U.S. 187, 192 (1996)) (quotation mark omitted). As a result, this Court would not have subject matter jurisdiction even if the AEA applied in this case.

**V.     The Court Does Not Otherwise Have Subject Matter Jurisdiction**

In its motion, the United States only argued for dismissal based upon the AEA exhaustion requirements, see D. 16, but the Court concluded that the AEA does not apply here. Although the United States did not raise other grounds for dismissal based upon Fed. R. Civ. P. 12(b)(1) in its papers, at the motion hearing, the United States argued that if the AEA did not apply in this case, Rios must rely upon another waiver of sovereign immunity to allow him to sue the United States government in federal court. Moreover, "a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) (citing In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988)). Thus, the Court must now consider whether it has another jurisdictional basis to hear this case. Namely, the Court considers whether it has subject matter jurisdiction under maritime principles at common law because the jurisdictional extension statutorily provided by the AEA is inapplicable here.

In his complaint, Rios asserts that this court has jurisdiction pursuant to 28 U.S.C. §§ 1333 and 1333(1), which provides federal courts with maritime jurisdiction. D. 1 at 2. The Supreme Court has established a two-part test to examine whether a federal court has admiralty jurisdiction in a given case. See Grubart, 513 U.S. at 534. That is, "a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." Id. In other words, "[a] party wishing to assert maritime jurisdiction over a tort must satisfy both the 'location' and 'connection' requirements of the test." Florio, 129 F.3d at 680. To satisfy the "location" or "situs" requirement, the party must show either that the injury occurred on navigable waters or that the injury was caused by a vessel that was on navigable waters. Id. (citing Grubart, 513 U.S. at 534). To fulfill the "connection" or "nexus" requirement, the party must demonstrate that the incident had "a potentially disruptive impact on maritime commerce and that the 'general character' of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id. (citing Grubart, 513 U.S. at 534; Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 93 (1st Cir. 1993)).

In this matter, Rios's claim does not fulfill the "location" prong of the Grubart test. See Grubart, 513 U.S. at 534. First, Rios was not on navigable water when the injury occurred and his injury was not proximately caused by a vessel on navigable water. See supra. Indeed, the record demonstrates that Rios was on the pier at the time of the accident, D. 16-2 at 6; D. 16-3 at 18, 20, 26, which the law considers to be an extension of land and not navigable waters. See, e.g., Grubart, 513 U.S. at 531-32; Victory Carriers, 404 U.S. at 206-07. In essence, this means that this case would only meet the location requirement if either the vessel in question or one of its appurtenances allegedly caused Rios's injury. As explained more fully above, however, Rios does not allege and

13

the record does not otherwise demonstrate that the vessel or its appurtenances caused his injury. See supra. "Under Grubart, maritime jurisdiction is found only where the location and the connection prongs are met; one by itself will not suffice." Florio, 129 F.3d at 680 (emphasis in original). Thus, even if Rios could establish a "connection" to maritime activity, the Court must hold that it does not have admiralty jurisdiction because Rios is unable to establish the required "location" prong of the Grubart test.

This result comports with Victory Carriers. In that case, the Supreme Court declined to extend federal maritime jurisdiction to a longshoreman who was injured on a pier when the overhead protection rack of a forklift came loose and fell on him. Victory Carriers, 404 U.S. at 203-04. The Supreme Court reasoned, in part, that the longshoreman was not injured by equipment that was part of the ship's gear or stored onboard the vessel, that the forklift was not under the control of the ship or its crew and that the accident did not occur onboard the vessel itself. Id. at 213-15. These same factors are present in Rios's case. For instance, like Victory Carriers, the accident occurred pier-side and not on the vessel itself. Moreover, the hose that injured Rios was not equipment that is normally part of the ship's gear or stored onboard the vessel. As explained by Rios—and not otherwise disputed by the United States—the hose was shore-based, owned, controlled and maintained by Boston Ship Repair and not the McLean, and was regularly stored at Boston Ship Repair. D. 19 at 4, 7.

Florio v. Olson also supports this outcome. There, the First Circuit determined that the trial court did not have maritime jurisdiction because the device that caused the injury was one that "ran from one part of the drydock to another part of the drydock, and was controlled from shore" such that the claims alleged no causal connection between the vessel itself and the accident. Florio, 129 F.3d at 681. Similarly, here, the hose was shore-based, owned, operated, and controlled by

Boston Ship Repair, and Rios has established no causal connection between the vessel and the injury.

Thus, the Court also does not have admiralty jurisdiction in this matter pursuant to Grubart. For all foregoing reasons, the Court must dismiss this action for lack of subject matter jurisdiction.

## VI. Conclusion

The Court **ALLOWS** the motion to dismiss, D. 16, for the reasons articulated in this Memorandum and Order. Accordingly, the Court intends to dismiss this case for the reasons explained here and raised, sua sponte, at the motion hearing. Although the Court has considered the parties' arguments at that hearing and believes that the parties had fair notice and opportunity to be heard on these matters then, see McCulloch v. Vélez, 364 F.3d 1, 6-7 (1st Cir. 2004), if there is any matter that was not previously raised by Rios that he would like the Court to consider as to subject matter jurisdiction, Rios has until May 19, 2017 to make such filing, not to exceed ten (10) pages. If no such filing is received, the Court anticipates entering the order of dismissal soon after May 19, 2017.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge